IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETTER PENNSYLVANIA, INC., *Plaintiff*, v. PENNSYLVANIA MANUFACTURERS' ASSOCIATION, *et al*, *Defendants*. | Civil Action No. 2:25-cv-931 Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Better Pennsylvania, Inc. ("Better Pennsylvania") is a non-profit political advocacy group that engages in online, print, and other advertising of ideas that it believes will, as its name states, make Pennsylvania a better place to live. The website it maintains is located at *betterforpennsylvania.org*. (ECF No. 1, p. 4). Its website and mailings prominently display its logo:



(*Id.*). Defendant Pennsylvania Manufacturing Association ("PMA") is also a non-profit advocacy group that takes a different and competing position on many issues when compared to Better Pennsylvania.[1] It maintains a website called "Making PA Better," which is located at *betterpa.org*, and displays this logo:

---

[1] David Naylor, Carl Marrara, and Joy Johnson are also defendants in this action. (ECF No. 1, pp. 2-3).

1



(*Id.* at 5-6). Beyond the similarities of the two entities' logos, the parties' websites have superficially similar layouts and photographs of, for example, workers and famous Pennsylvania structures. (*Id.* at 4).

Better Pennsylvania seeks to enjoin PMA's continued use of the web domain (*betterpa.org*) and the "Making PA Better" logo. (ECF No. 6). Three causes of action are asserted in the Complaint: Count One – trademark infringement in violation of 15 U.S.C. § 1125(a); Count Two – cybersquatting in violation of 15 U.S.C. § 1125(d); and Count Three – common law trademark infringement and unfair competition under Pennsylvania Law. (ECF No. 1). The Court held a hearing on Better Pennsylvania's Motion for Preliminary Injunction. (ECF No. 18). For the following reasons, it will not grant injunctive relief because Better Pennsylvania cannot demonstrate a reasonable liklihood of success on the merits of the federal claims pled at Counts One and Two of the Complaint. Both causes of action require commerical activity. The record establishes that neither Better Pennsylvania nor PMA engage in any commerical activities and, therefore, Better Pennsylvania's federal claims will not be able to succeed. This alone precludes the entry of preliminary injunctive relief. As to Count Three, which is a state law cause of action, the Court declines to exercise supplemental jurisdiction.

**I.    FACTUAL BACKGROUND**

The dispute between the parties centers upon PMA's use of the web domain "betterpa.org" and its logo, which is facially similar but not identical, to Better Pennsylvania's website and logo. The critical facts necessary for the disposition of Better Pennsylvania's Motion for Preliminary Injunction (ECF No. 6) are brief, straightforward, and undisputed.

Better Pennsylvania's founder and executive, Angela Valvano ("Valvano"), testified at the preliminary injunction hearing. She explained that Better Pennsylvania is "a 501(c)(4) nonprofit political advocacy organization that advocates for policies that help working Pennsylvanians and economic prosperity." (ECF No. 20, pp. 8-9). It advocates for its position through traditional print advertisements and electronic media, including its website. (*Id.* at 9). Between its website and its print publications, Better Pennsylvania uses its "Better PA" logo on at least fifty percent of its material. (*Id.* at 10).

Valvano testified that she discovered PMA's *betterpa.org* website and its "Making PA Better" logo by accident while searching Google for Better Pennsylvania in order to send an individual a link to Better Pennsylvania's website. (*Id.* at 13). PMA's website was returned as a search result. Valvano opened the website thinking it was Better Pennsylvania's website only to realize that it was PMA's website. She was immediately struck by its similarity to Better Pennsylvania's website. (*Id.*). Valvano acknowledged during her testiony that she has never been contacted by any of Better Pennsylvania's donors or facilities to express confusion about the PMA website. (*Id.* at 42-44).

It is undisputed that Better Pennsylvania does not offer for sale any goods or services. (*Id.* at 49). Better Pennsylvania receives all of its funding through grants. (*Id.*). It is further uncontested that PMA's website, like Better Pennsylvania's website, offers only advocacy and nothing for sale. (*Id.*). Further, the PMA website does not contain any advertisements for third parties. (*Id.*). No payments or donations can be made through either website. (*Id.*).

## II.   STANDARD OF REVIEW

The grant or denial of a preliminary injunction is within the sound discretion of a district court. *Reilly v. City of Harrisburg*, 858 F.3d 173, 178–79 (3d Cir. 2017) ("District courts have

the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" (internal citation omitted)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). The status quo refers to "the last, peaceable, noncontested status of the parties." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). Rather, such relief "should be granted only in limited circumstances." *Kos Pharms.*, 369 F.3d at 708 (internal citation omitted). A moving party "must establish entitlement to relief by clear evidence." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (internal citations omitted). Specifically, the movant must demonstrate: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms.*, 369 F.3d at 708; *see also Winter*, 555 U.S. at 20. The first two factors are "the most critical," and the moving party bears the burden of making the requisite showings. *Reilly*, 858 F.3d at 176, 179 (internal citations omitted). Once those "gateway factors" are met, a court should "consider[] the remaining two factors" and then "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

In reaching its decision on a request for injunctive relief, a district court sits as both the trier of fact and the arbiter of legal disputes. A court must, therefore, make "findings of fact and conclusions of law upon the granting or refusing of a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (citing FED. R. CIV. P. 52(a)(2)).

This "mandatory" requirement of Federal Rule of Civil Procedure 52(a)(2) ("Rule 52") must be met "even when there has been no evidentiary hearing on the motion." *Id.* Nevertheless, at the preliminary injunction stage, "procedures . . . are less formal and evidence is less complete than in a trial on the merits." *Kos Pharms.*, 369 F.3d at 718; *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." (internal citations omitted)). Accordingly, a court "may rely on affidavits and hearsay materials which would not be admissible evidence." *Kos Pharms.*, 369 F.3d at 718 (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)). The weight given to such materials will "vary greatly depending on the facts and circumstances of a given case." *Id.* at 719. The Court is also tasked with assessing the credibility of witness testimony and may base the decision to grant or deny a preliminary injunction on credibility determinations. *See Hudson Glob. Res. Holdings, Inc. v. Hill*, No. 02:07CV0132, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007).

### III.    ANALYSIS

The Court will not grant preliminary injunctive relief in favor of Better Pennsylvania because it cannot demonstrate a reasonable liklihood of success on the merits of its claims. The Court will first address the federal statutory claims asserted at Counts One and Two of Better Pennsylvania's Complaint. It will then address the state-law claim asserted at Count Three.

A. **Because the record reveals that PMA's actions have no connection with commercial activity, Better Pennsylvania failed to demonstrate a reasonable likelihood of success on the merits of its claims under 15 U.S.C. §§ 1125(a) and 1125(d).**

At Count One of its Complaint, Better Pennsylvania alleges that PMA is engaging in trademark infringement in violation of the Lanham Act, 15 U.S.C. §1125(a), by means of alleged

5

false designation of origin/false association. (ECF No. 1, p. 8). Count Two alleges a violation of the anti-cybersquatting provisions of 15 U.S.C. §1525(d). (*Id.* at 8-9). PMA argues that both counts are meritless because the relevant statutory provisions only address commercial activities and the record shows that neither party is engaged in commerce. (ECF No. 13, pp. 13-14).

The Court's analysis of whether §§ 1125(a) and/or 1125(d) of the Lanham Act apply in a non-commerical setting begins with an examination of the plain statutory languge.

1. <u>*Count One – 15 U.S.C. § 1125(a)*</u>

Section 1125(a) states in relevant part:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in *commercial* advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's *goods, services, or commercial activities*, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §1125(a) (emphasis added). In other words, § 1125(a) creates a civil action against any person who (1) "uses in commerce" (2) "a word, symbol, etc. that is false or misleading" (3) "on or in connection with any goods or services, or any container for goods." *Id*. The term "uses in commerce" modifies all the language in § 1125(a)(1)(A). There is no way to construe the plain language of this subsection that does not require a connection to commerce.

6

The meaning of the term "commerce" as used in § 1125(a) is informed by the other terms of the subsection. The statute makes repeated references to "goods," "services," and "commercial activities." When read as a whole, the statutory language of § 1125(a) clearly conveys a meaning that limits the type of proscribed conduct to actions within the ordinary meaning of commerce—involving the exchange of goods and/or services for economic motivation. Conversely, the language does not convey a meaning that would encompass the free dissemination of viewpoint-based community advocacy.

The United States Court of Appeals for the Third Circuit has not explicitly stated that a "commercial use" requirement must be met to sustain a claim under the Lanham Act. It has, however, recognized that an alleged misleading use must have a clear promotional purpose to attract customers. *See Facenda v. NFL Films, Inc.*, 542 F.3d 1007, 1017–18 (3d Cir. 2008) (finding that defendant's unauthorized use of the plaintiff's voice in a televised program that primarily promoted the upcoming release of a video game was actionable under the Lanham Act as commercial speech). While the Third Circuit has allowed claims under the Lanham Act when the offending speech is commercial in nature, it has expressed reservations in authorizing actions against non-commercial speech, which is generally protected by the First Amendment. *Id.* at 1018; *see also U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 932–33 (recognizing reduced First Amendment protections for commercial speech in a defamation dispute involving competing advertisements).

District courts within the Third Circuit have concluded that an action under the Lanham Act requires a commercial element. In *Keel v. Axedlrod*, 148 F. Supp. 3d 411 (E.D. Pa. 2015), the district court rejected a Lanham Act claim brought by one political consultant against another alleging that the defendant falsely claimed credit in a publication for a strategy actually devised

by the plaintiff. The district court concluded that the Lanham Act claim could not be maintained absent a nexus to commerce. It explained that "the majority of circuits have required a threshold commercial element for Lanham Act claims necessitating that a plaintiff plead the goods or services were misappropriated in the course of a defendant's commercial communication or activity." *Id.* at 417 (citing *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013)); *see also Farah*, 736 F.3d at 541 (stating that "[e]very circuit court of appeals to address the scope of [the Lanham Act] provisions have held that they apply only to commercial speech."). The *Keel* court cited several cases where other district courts within the Third Circuit reached the conclusion that Lanham Act claims must have a connection to commerce. *Keel*, 148 F. Supp. 3d at 419 (citing *Valley Forge Military Acad. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 455 (E.D. Pa. 2015); *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding, LLC.*, Civil Action No. 06-0597, 2007 WL 30115, at *4-5 (E.D. Pa. Jan. 4, 2007); *Cellco P'ship v. Commc'n Workers of America*, Civil Action No. 02–5542, 2003 WL 25888375, at *4-5 (D.N.J. Dec. 11, 2003); *Bd. Of Dirs. of Sapphire Bay Condominiums West v. Simpson*, Civil Action No. 04–622014, WL 4067175, at *3 (D.V.I. Aug. 13, 2014)).

While not binding, the Court finds the United States Court of Appeals for the Fourth Circuit's decision in *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 786 F.3d 316 (4th Cir. 2015) to be instructive and persuasive. The plaintiff, the Radiance Foundation ("Radiance"), published an article online entitled "NAACP: National Association for the Abortion of Colored People" that criticized the defendant's, the National Association for the Advancement of Colored People's, stance on abortion. The Fourth Circuit examined whether Radiance's use of the acronym "NAACP" as a criticism of the defendant's stance on abortion was actionable under the Lanham Act. It held that Radiance's use of the term

8

did not violate the Lanham Act. The Fourth Circuit explained first that "[t]he Lanham Act's provisions prohibiting trademark infringement, 15 U.S.C. §§ 1114(1) and 1125(a), exist to protect consumers from confusion in the marketplace." *Id.* at 321 (citing *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 162-64 (1995)). It further explained that "[t]rademarks designate the source of affiliation of goods and services in order to provide consumers with information about those goods and services, allowing mark holders to build and benefit from the reputation of their brands." *Id.* The Fourth Circuit highlighted that the Lanham Act is intended to regulate the marketplace of goods and services, but not of expression and ideas—for such regulation may run into the First Amendment. *Id.* at 321-22. It noted that "Congress 'did not intend for trademark laws to impinge the First Amendment rights of critics and commentators.'" *Id.* at 321 (quoting *Lamparello v. Falwell,* 420 F.3d 309, 313 (4th Cir. 2005)). In concluding that Radiance's use of the defendant's mark did not violate the Lanham Act, the Fourth Circuit held that the commercial element is essential to an action under the Act:

> The first element of trademark infringement at issue is thus whether Radiance's use of the NAACP's marks was "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1); *see also* § 1125(a)(1) (requiring mark be used "in connection with any goods or services."). The NAACP urges us to give this requirement a "broad construction," but that construction would expose to liability a wide array of noncommercial expressive and charitable activities. Such an interpretation would push the Lanham Act close against a First Amendment wall, which is incompatible with the statute's purpose and stretches the text beyond its breaking point. We decline to reach so far.

*Id.* at 322. It explained that interpreting the Act to include noncommercial speech "would be an 'overextension' of the Lanham Act's reach that would 'intrude on First Amendment values.'" *Id.*

The Court agrees with the approach taken by district courts within the Third Circuit and the Fourth Circuit. The plain language of § 1125(a) limits the cause of action provided by the

9

Lanham Act to commercial representations in connection with goods and/or services. Neither Better Pennsylvania nor PMA are engaged in commercial activities. PMA's allegedly infringing website does not offer or refer to any goods or services for sale. Both parties' websites offer advocacy and different viewpoints on issues involving Pennsylvanians. The Court holds that such non-commercial conduct is not covered by the Lanham Act. Better Pennsylvania has failed to demonstrate a reasonable likelihood of success on the merits of Count One.

    2.    *Count Two – 15 U.S.C. § 1125(d)*

Better Pennsylvania has also not demonstrated that it is reasonably likely to succeed on the merits of Count Two of its Complaint. The plain language of the anti-cybersquatting provisions of the Lanham Act provides:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the *goods or services* of the parties, that person—
>
> (i) *has a bad faith intent to profit from that mark*, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that—
>
> > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> >
> > (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> >
> > (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. §1125(d) (emphasis added). This section of the Lanham Act requires a commercial element that is not present in this action.

Section 1125(d)(1)(A)(i), which must be read as a necessary threshold to the remainder of the subsection, will only extend a cause of action against a party who "has a bad faith intent to

10

profit from [the plaintiff's] mark." *Id.* "Profit" is not defined in the statute. When words are not defined within the statute, the Court must construe them "in accordance with [their] ordinary or natural meaning." *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190 (3d Cir. 2015) (citing *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)). The Court may "look to dictionary definitions to determine the ordinary meaning of a word." *United States v. Husmann*, 765 F.3d 169, 173 (3d Cir. 2014). Profit is defined as "a valuable return: gain." MERRIAM-WEBSTER, *Profit Defined*, *https://www.merriam-webster.com/dictionary/profit#:~:text= Synonyms%20of%20profit,1,of%20goods%20over%20their%20cost* (last visited Aug. 18, 2025). This definition is supported by interpreting the subsection in light of the statute, which, as above, is expressed in terms of commercial activities. *See Bonkowski*, 787 F.3d at 198 ("[I]t is well established that statutory language must be read with reference to its statutory context.").

The record shows that PMA made no profit from the use of the domain name at issue. Like Better Pennsylvania's website, PMA's website offered only advocacy regarding its ideology. It does not offer or refer to goods or services. Absent commercial activities that are carried out with the intent to generate a profit, the Court holds that Better Pennsylvania is not likely to succeed on the merits of Count Two.[2]

---

[2] The Court holds that Better Pennsylvania has also not met its burden to show a reasonable likelihood of success on the merits when the *betterpa.org* domain name was registered on August 3, 2008 – before the creation of Better Pennsylvania in 2019. *See GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) (explaining that the prohibition contained in § 1125(d)(1) applies when a domain name is identical or confusingly similar to a mark that is distinctive "*at the time of registration of the domain name*" and that a re-registration is not a "registration" within the meaning of § 1125(d)(1) (emphasis added)).

### B. The Court will decline to exercise supplemental jurisdiction over the Pennsylvania law claims at Count Three.

Better Pennsylvania brings common law trademark infringement and unfair competition claims under Pennsylvania law at Count Three. (ECF No. 1, pp. 9-11). Considering the Court's holding that the federal causes of action raised at Counts One and Two are unlikely to succeed on the merits, and in light of the early stages of this litigation, the Court is not inclined to exercise its supplemental jurisdiction under 28 U.S.C. § 1367 to entertain a state law cause of action.[3] *See Anash, Inc. v. Borough of Kingston*, Civil Action No. 3:24-CV-01955, 2024 WL 5294369, at *12 (M.D. Pa. Dec. 19, 2024) (noting that a court may decline to exercise supplemental jurisdiction over state law claims and declining to exercise supplemental jurisdiction where the court did not grant a preliminary injunction with regard to any of the claims over which it had original jurisdiction).

Declining to exercise supplemental jurisdiction over the state law claims is warranted not only by concerns for judicial efficiency, but to encourage comity between the federal and state systems. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (holding that the decision to exercise supplemental jurisdiction should be based on "the values of judicial economy, convenience, fairness, and comity."). As the Court has previously observed, unfair competition under Pennsylvania law is not a single cause of action with its own distinct elements, but rather a general term for multiple causes of action addressing several types of malfeasance in the commercial realm. *See NLMK Pennsylvania, LLC v. United States Steel Corp.*, 592 F. Supp. 3d 432, 442-43 (W.D. Pa. 2022) ("[T]he contours of Pennsylvania unfair competition law are not entirely clear. . . . Under Pennsylvania unfair competition law, the cause

---

[3] When a district court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), it has discretion to exercise or decline to exercise this jurisdiction. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003).

of action evades a single definition susceptible to distillation into universally applied elements."). In Pennsylvania state courts and federal courts applying Pennsylvania law, unfair competition common law is actively developing. While there is some caselaw holding that unfair competition claims may share the elements of claims under the Lanham Act, absent any claims over which the Court has original jurisdiction, the question of how Pennsylvania unfair competition law should apply in the instant case is best left for Pennsylvania state courts.

Given the early stage of this litigation, the Court's finding that Plaintiffs are unlikely to succeed on the merits of their federal claims, and the unsettled nature of Pennsylvania unfair competition law, the Court declines to examine the merits of Count Three.

### IV. CONCLUSION

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). For the reasons set forth herein, the Court holds that Better Pennsylvania cannot show a likelihood of success on the merits of Counts One and Two, and it is inclined not to exercise supplemental jurisdiction over Count Three. Because the gateway preliminary injunction factor is not met, the remaining preliminary injunction factors are irrelevant. *See Reilly*, 858 F.3d at 179. By Order of Court to follow, the Court will deny Plaintiff Better PA's Motion for a Preliminary Injunction. (ECF No. 6).

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: 9/16/25